IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| KAMALA SHARDUL STROHMEYER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:17-CV-443 |
| | ) | |
| CHASE BANK USA, N.A., EQUIFAX, INC., | ) | |
| a/k/a EQUIFAX INFORMATINOSERVICES, | ) | |
| LLC, and DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

This civil action is before the court for consideration of Defendant Equifax's motion for summary judgment. [Doc. 18]. Plaintiff has filed a response, and Defendant has submitted a reply. [Docs. 19, 21]. For the reasons that follow, the motion will be granted and this case will be dismissed.

### I.     **Background**

In her complaint, Plaintiff alleges that Equifax is a consumer reporting agency ("CRA"). [Doc. 1 at 8]. She alleges that, on June 16, 2017, she sent Equifax a notice of dispute demanding validation of an alleged account with Chase Bank ("Chase"). [*Id.* at 10]. On August 2, 2017, she sent Equifax a follow-up notice of dispute, again demanding validation of an alleged account with Chase. However, Plaintiff alleges that Equifax failed to note the dispute and continued to report the inaccurate information. [*Id.*]. She contends that Equifax did not respond to her letters of dispute, and refused to amend its reports to

reflect the dispute, in violation of the Fair Credit Reporting Act ("FCRA"). [*Id*. at 11]. Plaintiff alleges that, not only did Equifax fail to respond to her written request, it failed to delete information found to be inaccurate, reinserted the information without following the requirements of the FCRA, and failed to properly investigate her disputes. [*Id*. at 13]. Moreover, Plaintiff alleges that Equifax failed to maintain and follow reasonable procedures to assure maximum possible accuracy of her credit reports. Plaintiff alleges that Equifax's actions were malicious and willful. [*Id*.]. Plaintiff also alleges state law claims against Equifax for: (1) invasion of privacy; (2) negligent, wanton and/or intentional hiring and supervision of incompetent employees or agents; and (3) unspecified state law claims. [*Id*. at 13-17].

Plaintiff attaches to her complaint a letter sent to Chase, and copied to Equifax, dated July 23, 2016. [Doc. 1-1 at 1-6]. In this letter, Plaintiff stated that she was disputing Chase's claim for payment, and had concluded that Chase was in breach of the alleged credit card agreement. [*Id*.]. A second letter to Chase, and copied to Equifax, dated August 17, 2016, repeated the same information as the July 23 letter, but noted that Chase had responded to her prior letter, although not to her satisfaction. [*Id*. at 7-12]. A third letter to Chase, and copied to Equifax, dated June 16, 2017, indicates that Plaintiff disputed an inaccuracy on her credit reports, namely, a report regarding a Chase Account which stated in Equifax's report: "Charge Off, Charged off account 05/2016, Charge Off Amount $13,284.00." [*Id*. at 13-15]. Plaintiff contended that this item was "entirely inaccurate and incomplete." [*Id*.]. An August 2, 2017 letter to Equifax, Experian, and TransUnion stated

that it was a follow-up to the June 16 letter, and no changes had been made to her credit reports referencing her dispute with Chase. [*Id.* at 19-20]. Finally, Plaintiff attaches a copy of a letter she received from Equifax on July 10, 2017, which stated that Equifax had reviewed her dispute and had verified that the disputed account belonged to Plaintiff. [*Id.* at 24-27].

In support of the instant motion for summary judgment, Equifax submitted a sworn declaration from Shetonjela Barber, a legal support associate at Equifax, detailing the following facts, with supporting documentation. [Doc. 18-2 at 2-3]. Equifax is a CRA as defined by the FCRA. [*Id.* at 3]. Equifax maintains detailed procedures to assure maximum possible accuracy of the information it reports, and corrects errors that are brought to its attention. [*Id.* at 4]. Specifically, Equifax only accepts credit information from those sources that it has deemed reasonably reliable based on Equifax's own investigation, the source's reputation in the community, and/or Equifax's longstanding business relationships with it. Equifax conducts an extensive investigation to ensure that a company is reliable. [*Id.*]. Once Equifax receives data from an approved source, Equifax conducts a series of computerized quality checks before adding the data to its consumer database, to determine whether the date is in the proper format and whether the data, as a whole, deviates from the expected norms. [*Id.* at 4-5].

Equifax also maintains detailed policies and procedures for conducting reasonable reinvestigations of information disputed by consumers. [*Id.* at 5]. Specifically, upon receipt of a dispute, Equifax locates the consumer's credit file and then opens an

Automated Consumer Interview Systems ("ACIS") case, which tracks the process of the reinvestigation. Equifax then reviews and considers all relevant information, including any documentation provided by the consumer. [*Id*.]. If further investigation is required, Equifax notifies the source of the account information of the dispute, identifies the nature of the dispute, and includes the consumer's account information as then appears in Equifax's credit file. [*Id*. at 5-6]. Generally, Equifax transmits this through a form on an Automated Consumer Dispute Verifications ("ACDV") system. [*Id*. at 6]. The ACDV electronic mail process allows CRAs to communicate with data furnishers through the use of an array of pre-defined codes and narrative phrases, and the standardized process enhances consistently and reduces misunderstandings. Once the data furnisher receives the dispute from Equifax, it is generally required, both by its contract with Equifax and the FCRA, to conduct its own investigation and report the results to Equifax. If the data furnisher advises Equifax to delete or update the account information, Equifax takes the necessary action and notifies the consumer. Once the reinvestigation is complete, Equifax sends the consumer the results along with a summary of the consumer's rights under the FCRA, additional steps the consumer may take, and a description of the procedures used to reinvestigate the dispute. [*Id*.].

Equifax has determined that Chase is a reliable source of information based on the history of their relationship and Chase's agreement to the terms of a subscriber agreement. [*Id*. at 6]. Chase reported to Equifax a credit card account ending in 4733 ("Account") belonging to Plaintiff. [*Id*. at 7]. On July 28, 2016, Equifax received a letter dated July

23, 2016, from Plaintiff, in which Plaintiff contended that the Account was not delinquent, because there was not a "legal and legitimate loan." [Doc. 18-2 at 7; Doc. 18-3 at 2]. Plaintiff requested that Equifax "enter this account as being suspended[.]" [Doc. 18-3 at 2]. Plaintiff also attached to this letter a copy of her July 23, 2016, letter to Chase, which she attached to the instant complaint. [*Id*. at 3-8]. In response to this dispute, Equifax followed its normal reinvestigation procedures, and, on August 1, 2016, Equifax sent an ACDV to Chase to request verification of the Account. [Doc. 18-2 at 7; Doc. 18-4 at 1]. Chase's employee, Stephan Boddie, prepared Chase's response to the ACDV. [*Id*.]. On August 9, 2016, Equifax received Chase's response to the ACDV, confirming that the Account belonged to Plaintiff, and confirming the account information, but modifying some payment history. [Doc. 18-2 at 8; Doc. 18-4]. On or about August 9, 2016, Equifax provided the results of the reinvestigation to Plaintiff. [Doc. 18-2 at 8].

On July 29, 2016, Equifax received another letter dated July 23, 2016, from Plaintiff, which contained the same language as the letter received on July 28, 2016. [Doc. 18-2 at 8; Doc. 18-5 at 1]. This letter to Equifax also attached Plaintiff's July 23, 2016, letter to Chase, which Plaintiff attached to the instant complaint. [Doc. 18-5 at 3-8]. On July 29, 2016, as part of its reinvestigation, Equifax sent an ACDV to Chase to request verification of the Account. [Doc. 18-2 at 8; Doc. 18-6 at 2]. Chase's employee Stephan Boddie prepared Chase's response to the ACDV. [*Id*.]. On August 9, 2016, Equifax received Chase's response to the ACDV, confirming that the Account belonged to Plaintiff and confirming all account information, but modifying some payment history. [Doc. 18-2

5

at 8; Doc. 18-6]. On or about August 10, 2016, Equifax provided Plaintiff with its reinvestigation results. [Doc. 18-2 at 8].

On August 20, 2016, Equifax received a letter, dated August 17, 2016, from Plaintiff, which again contained the same language as Plaintiff's prior two letters to Equifax. [Doc. 18-2 at 9; Doc. 18-8 at 2]. Plaintiff attached a copy of her August 17, 2016, letter to Chase, which she also attached to the instant complaint. [Doc. 18-8 at 3-8]. On August 21, 2016, Equifax again received the exact same letter, dated August 17, 2016. [Doc. 18-2 at 9; Doc. 18-9]. On August 23, 2016, Equifax sent an ACDV to Chase as part of its reinvestigation response to these two letters. [Doc. 18-2 at 9; Doc. 18-10 at 2]. Chase's employee, Nivedha Nadar prepared Chase's response to the ACDV. [*Id.*]. On September 1, 2016, Equifax received Chase's response to the ACDV, which confirmed that the Account belonged to Plaintiff, but modified some account information and payment history. [Doc. 18-2 at 9; Doc. 18-10]. On September 2, 2016, Equifax provided Plaintiff with its reinvestigation results. [Doc. 18-2 at 9].

On June 20, 2017, Equifax received a letter dated June 16, 2017, from Plaintiff, which was addressed to Chase, and disputed the Account. [Doc. 18-2 at 10; Doc. 18-11]. Plaintiff contested the information Equifax's report contained about the Account, specifically, that the account was a "Charge Off, Charged off account 05/2016, Charge Off Amount $13,284.00." [Doc. 18-11 at 2]. On June 29, 2017, Equifax sent an ACDV to Chase to request verification of the Account. [Doc. 18-2 at 10; Doc. 18-12 at 2]. Chase's employee, Meenaz Ibrahim prepared Chase's response. [*Id.*]. On July 7, 2017, Equifax

6

received Chase's response to the ACDV, confirming that the Account belonged to Plaintiff, but modifying some account information and payment history. [Doc. 18-2 at 10; Doc. 18-12]. On or about July 10, 2017, Equifax provided Plaintiff with its reinvestigation results. [Doc. 18-2 at 10].

## II.    Standard of Review

Summary judgment is appropriate when the moving party shows that the record—the admissions, affidavits, answers to interrogatories, declarations, depositions, or other materials—is without a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party has the initial burden of identifying the basis for summary judgment and the portions of the record that lack genuine issues of material fact. *Celotex*, 477 U.S. at 323. The moving party discharges that burden by showing "an absence of evidence to support the nonmoving party's case," at which point the non-moving party, to withstand summary judgment, must identify facts in the record that create a genuine issue of material fact. *Id*. at 324-25.

Not just any factual dispute will defeat a motion for summary judgment—the requirement is "that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it may affect the outcome of the case under the applicable substantive law, and an issue is "genuine" if the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. In short, the inquiry is whether the record contains evidence

7

that "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. When ruling on a motion for summary judgment, a court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### III. Analysis

**1. FCRA Claims**

Plaintiff has raised claims against Equifax under §§ 1681e(b) and 1681i(a) of the FCRA. [Doc. 1 at 11-13]. Equifax contends that Plaintiff's §§ 1681e(b) and 1681i(a) claims fail because she has no evidence that the information in her consumer report or credit file was inaccurate. [Doc. 18-1 at 14-15]. Equifax also asserts that Plaintiff's § 1681e(b) claim fails because Plaintiff has adduced no evidence that: (1) Equifax failed to follow reasonable procedures in preparing her consumer report; (2) Equifax issued a consumer report containing inaccurate information about her; or (3) an Equifax consumer report caused her harm. [*Id*. at 16-18]. Finally, Equifax asserts that Plaintiff's § 1681i(a) claim fails because: (1) Plaintiff's disputes were impermissible collateral attacks on the Chase account; and (2) Equifax reasonably reinvestigated Plaintiff's dispute of the Chase account. [*Id*. at 18-22].

Plaintiff responds that Equifax did not properly respond to her dispute, because it did not report that the information was disputed. [Doc. 19 at 6]. Plaintiff contends that it "is not reasonable to assume that Equifax conducted a proper reinvestigation due to the fact that it failed to modify its files." [*Id*. at 8]. Equifax replies, reiterating its position. [Doc. 21].

"The FCRA was enacted to regulate credit reports, provide guidelines for credit reporting agencies and entities that furnish consumer information to credit reporting agencies, and provide protection to consumers." *Lufkin v. Capital One Bank (USA), N.A.*, No. 3:10-CV-18, 2010 WL 2813437, at *2 (E.D. Tenn. July 16, 2010). The FCRA imposes obligations on three entities: (1) CRAs; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies. *Id*.

**Section 1681e(b)**

Section 1681e(b) provides "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). In order to assert a claim under § 1681e(b), a plaintiff must prove: (1) the defendant reported inaccurate information about the plaintiff; (2) the defendant either negligently or willfully failed to follow reasonable procedures to assure maximum possible accuracy of the information about the plaintiff; (3) the plaintiff was injured; and (4) the defendant's conduct was the proximate cause of the plaintiff's injury. *Nelski v. Trans Union, LLC*, 86 F. App'x 840, 844 (6th Cir. 2004). A showing of inaccuracy is an

essential element of a claim under the FCRA. *Spence v. TRW, Inc.*, 92 F.3d 380, 382 (6th Cir. 1996).

The Court finds that there is no genuine issue of material fact as to whether Equifax violated § 1681e(b). First, Plaintiff has not shown that Equifax reported inaccurate information about her, which is an essential element of a claim under § 1681e(b). *See id*. Plaintiff does not allege, and apparently never alleged to Equifax or Chase, that she was not the owner of the credit card account, or that the amount charged or payment history was incorrect. Plaintiff's allegations appear to be part of a debt-avoidance scheme referred to as a "vapor money" theory or "no money lent" theory, which has been explained as follows:

> Debtors employing this debt-avoidance scheme contend that when they sign notes, they fund the loan with their own signatures, creating new money for their own account so that when money is advanced, it is the debtor's own money that is used.

*Adams v. Bank of Am., N.A.*, No. 1:06-cv-228, 2007 WL 2746871, at *2 (M.D.N.C. Sept. 19, 2007). "Claims based on this and similar debt elimination schemes have been universally rejected by courts." *Id*. at *3; *see Demmler v. Bank One NA*, No. 2:05-cv-322, 2006 WL 640499, at *4 (S.D. Ohio Mar. 9, 2006) (collecting cases). Plaintiff's only response to Equifax's argument that it did not report inaccurate information is that Equifax failed to report the ongoing dispute over the account. [Doc. 19 at 4]. However, Equifax was not required to report Plaintiff's meritless dispute after it investigated and confirmed the information it had received from Chase about the Account. Because there is no genuine

issue of material fact as to whether Equifax reported inaccurate information about Plaintiff, Equifax is entitled to summary judgment on the § 1681e(b) claim.

Moreover, Plaintiff has not shown that Equifax either negligently or willfully failed to follow reasonable procedures to assure maximum possible accuracy of the information about Plaintiff. In support of its motion for summary judgment, Equifax submitted evidence of its procedures for assuring the accuracy of the information it reports, including investigating and signing subscriber agreements with sources of information, and quality assurance checks performed on specific data. [Doc. 18-2 at 4-5]. In her response, Plaintiff conflates the issue under § 1681e(b) with that under § 1681i(a), and centers her argument on Equifax's alleged negligent reinvestigation. [Doc. 19 at 5-6]. Plaintiff does, however, state that she disagrees that Equifax maintained detailed procedures and disagreed that Chase is a reliable source of information. [*Id*. at 2-3]. Plaintiff's statements of disagreements, without further evidence, are insufficient to withstand summary judgment. *See Celotex*, 477 U.S. at 324-25 (stating that to withstand summary judgment, a non-moving party must identify facts in the record that create a genuine issue of material fact). Given that Equifax has presented evidence that it maintained reasonable procedures for assuring the accuracy of information in Plaintiff's credit report, and Plaintiff has submitted no more than her own bald assertions that Equifax did not maintain reasonable procedures, Equifax is entitled to summary judgment on the § 1681e(b) claim. Accordingly, the Court will grant Equifax's motion for summary judgment as to the § 1681e(b) claim.

**Section 1681i(a)**

Section 1681i(a) requires a CRA to reinvestigate disputed information:

> If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer.

15 U.S.C. § 1681i(a)(1)(A). The Sixth Circuit has not yet decided whether § 1681i(a)(1)(A) has an inaccuracy element, but has stated that "damages would be almost impossible to prove without it." *Turner v. Experian Info. Solutions, Inc.*, No. 17-3795, 2018 WL 3648282, at *2 (6th Cir. Mar. 1, 2018) (citing *Salei v. Am. Express Travel Related Servs. Co.*, No. 96-1799, 1997 WL 809956, at *3 (6th Cir. Dec. 19, 1997)).

The Court concludes that there is no genuine issue of material fact as to whether Equifax properly reinvestigated Plaintiff's Chase Account after receiving her dispute. In support of its summary judgment motion, Equifax submitted evidence explaining its reinvestigation procedures, and how it followed those procedures on four different occasions in response to disputes filed by Plaintiff. [Doc. 18-2 at 5-10]. In response, Plaintiff merely states that it is "not reasonable to assume that Equifax conducted a proper reinvestigation due to the fact that it failed to modify its files" and "[w]hen a consumer repeatedly disputes an alleged debt, the credit reporting agency must conduct a manual reinvestigation." [Doc. 19 at 8]. Again, Plaintiff has pointed to no evidence in the record supporting her bald assertions. Moreover, the Court need not "assume that Equifax

conducted a proper reinvestigation," as Equifax has submitted evidence that, indeed, it conducted a proper reinvestigation. Plaintiff's main contention appears to be that Equifax should have noted on her credit report that the information about the Account was disputed. However, nothing in § 1681i(a) requires Equifax to note a dispute after it has confirmed information with the source, in this case, Chase. Because the evidence clearly shows that Equifax conducted reasonable reinvestigation of the Account on four separate occasions, the Court finds that there is no genuine issue of material fact as to Plaintiff's § 1681i(a) claim, and Equifax's motion for summary judgment will be granted as to this claim.

   **2. State Law Claims**

Plaintiff alleges state law claims of: (1) invasion of privacy [Doc. 1 at ¶¶ 39-47]; (2) "negligent, wanton, and/or intensional [sic] hiring and supervision of incompetent employees or agents" [*Id.* at ¶¶ 49-51]; and (3) unspecified "state law claims" [*Id.* at ¶¶ 53-60]. The Court construes Plaintiff's unspecified "state law claims" as a claim of negligence. Equifax argues that Plaintiff's state law claims are preempted by § 1681h(e) because Plaintiff has offered no evidence that Equifax acted with malice or willfulness. [Doc. 18-1 at 26].

Plaintiff's response to the preemption arguments appears to be that the Court has supplemental jurisdiction over her state law claims and therefore they are not preempted [Doc. 19 at 9-11]. However, as Equifax points out in reply [Doc. 21 at 8], supplemental jurisdiction does not save state law claims that are preempted by federal law. Under 28 U.S.C. § 1367(a), federal courts have supplemental jurisdiction, or authority to hear a case,

over state law claims that are so related to federal question claims brought in the same action as to "form part of the same case or controversy under Article III of the United States Constitution." The state law claims must first survive preemption. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 392 (2d Cir. 2007) ("[t]he district court may … properly exercise supplemental jurisdiction over any state law claim surviving preemption").

As the Court previously explained, in granting Chase's motion to dismiss, the FCRA contains two preemption provisions, each of which limit a plaintiff's ability to assert state law claims based on the defendant's furnishing of information to a credit reporting agency. *Lufkin*, 2010 WL 2813437, at *2. The first, contained in § 1681h(e), provides:

> Except as provided in sections 1681n and 1691o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e). Section 1681h(e) does not define "malice" or "willful intent to injure," but most courts have adopted the meaning of the term in the defamation context. *Shafer v. Karric Square Properties, LLC*, No. 2:17-cv-1098, 2019 WL 1300217, at *6 (S.D. Ohio, Mar. 21, 2019) (citing *Saint Torrance v. Firstar*, 529 F. Supp. 2d 836, 844 (S.D. Ohio 2007)). Thus, a defendant acts with "malice" when it furnishes the information knowing that the information is false or in reckless disregard of its truth of falsity. *Wolfe*

*v. MBNA Am. Bank*, 485 F. Supp. 2d 874, 883 (W.D. Tenn. Apr. 25, 2007). Additionally, "willful intent to injure" requires a showing that defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others." *Id*.

The Court agrees that Plaintiff's claim of negligent hiring and supervision is preempted by the plain language of § 1681h(e), because Plaintiff does not even allege malice or willfulness as to that claim. Additionally, the Court finds that Plaintiff's claims of invasion of privacy and negligence are preempted by § 1681h(e), because Plaintiff has presented no evidence that Equifax acted with malice or willful intent to injure. Instead, Plaintiff's invasion of privacy and negligence claims are based on the same actions as her FCRA claims against Equifax. As discussed previously, there is no genuine issue of material fact as to whether Equifax violated the alleged sections of the FCRA. Plaintiff has presented absolutely no evidence of wrongdoing on the part of Equifax, much less shown that Equifax acted with malice or willful intent to injure. Accordingly, Plaintiff's state law claims are preempted by the FCRA, and the Court will grant summary judgment as to each of Plaintiff's state law claims.

## IV. Conclusion

Accordingly, for the reasons stated herein, the Defendant's motion for summary judgment [doc. 18] will be granted and this case dismissed. An order consistent with this opinion will be entered.

                                                   s/ Thomas W. Phillips
                                       SENIOR UNITED STATES DISTRICT JUDGE